# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LORENZO HALL, #B-64594, | ) |
| Plaintiff, | ) |
| -vs- | ) Case No.: 11-cv-446-JPG |
| CHAPLAIN SUTTON and DIETARY MANAGER BRYANT, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 60) of Magistrate Judge Philip M. Frazier recommending that the Court grant the defendants' motion for summary judgment (Doc. 53). Plaintiff Lorenzo Hall has objected to the Report (Doc. 61), and the defendants have responded to that objection.

Hall, a Muslim who was incarcerated in Pinckneyville Correctional Center ("Pinckneyville") at all relevant times, complains in this case that in 2010 and 2011, defendant Dietary Manager Terri Bryant provided him inadequate nutrition during the month of Ramadan because he was not given a bag lunch to eat after sundown and before sunrise in addition to his regular breakfast and dinner meals. Hall claims this caused his spiritual experience during Ramadan to be diminished. He also complains that in 2010 defendant Chaplain Rick Sutton did not allow a timely celebration of the Eid-Ul-Fitr prayer service, which Hall believes must be held the morning of the first day following the completion of Ramadan, and the Eid-Ul-Fitr meal, which Hall believes must be held within three days following the completion of Ramadan. He claims this violated the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* (Count 1), and the Eighth Amendment

(Count 2).

I.  **Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

II. **The Report and Objections**

Magistrate Judge Frazier found the defendants were entitled to qualified immunity on Hall's claims under 42 U.S.C. § 1983 alleging First Amendment violations and that the defendants were entitled to judgment on the merits on Hall's RLUIPA claim.

Specifically, with respect to the Eid-Ul-Fitr prayer service, Magistrate Judge Frazier found it was held late in 2010. Ramadan ended on Thursday, September 9, but the service was not held until Monday, September 13. Nevertheless, he found the late service did not substantially burden Hall's religious exercise because he was still able to fast and gather with other Muslims to mark the end of Ramadan. Thus, Sutton did not violate RLUIPA.

With respect to the nutritional content of the meals Hall received during Ramadan, Magistrate Judge Frazier found no competent evidence that Hall was deprived of adequate nutrition during Ramadan in 2010 or 2011 or that Bryant was aware of and disregarded any such inadequate nutrition. He further found that receiving only two meals a day did not substantially burden Hall's religious exercise because he was still able to observe Ramadan. Thus, Bryant did not violate RLUIPA. Magistrate Judge Frazier further found that it was not clearly established

that an inmate was entitled to three nutritious meals a day while participating in a fast as long as he received adequate nutrition overall. Accordingly, Magistrate Judge Frazier concluded that Bryant was entitled to qualified immunity on Hall's constitutional claims.

Hall objects (Doc. 61), arguing that 1,000 calories per day for a thirty-day period was clearly not sufficient nutrition. He further argues that timely Eid-Ul-Fitr services are essential tenets of his Islamic faith that cannot be satisfied by a service even one day late.

### III. Analysis

The Court reviews this matter *de novo* and finds that the Report's conclusions are correct, although believes it advisable to supplement its reasoning.

As a preliminary matter, Hall concedes the summary judgment motion as to Count 2, his Eighth Amendment claim, so only Count 1, his First Amendment and RLUIPA claims, remain in issue. Additionally, the Court notes that the only relief Hall can receive under RLUIPA is injunctive relief. Money damages are not available under RLUIPA against states or individuals in their official capacities, *Vinning-El v. Sutton*, 657 F.3d 591, 592 (7th Cir. 2011) (citing *Sossamon v. Texas*, 131 S. Ct. 1651 (2011); *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)), or individuals in their personal capacities, *Vinning-El*, 657 F.3d at 592 (citing *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009)). However, Hall's claims for injunctive relief are moot in light of the fact that he has been transferred from Pinckneyville to Western Illinois Correctional Center (Docs. 65 & 66). Therefore, the Court addresses only Hall's § 1983 claim alleging violation of his First Amendment rights and finds the defendants are entitled to qualified immunity.

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The qualified immunity test has two prongs: (1) whether the facts, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend. *Denius*, 209 F.3d at 950-51.

    A.    <u>Adequacy of Nutrition and Calories in Meals</u>

The evidence, reasonably construed in Hall's favor, shows that his sincere religious beliefs require that he fast from sunrise to sunset on each of the 29 or 30 days of Ramadan. The fast is, among other things, to come closer to God by following his command to fast. No evidence shows his sincere religious beliefs require him to consume the same number of calories per day during Ramadan that he does during other times of the year. In Pinckneyville, during Ramadan, Hall was provided the regular breakfast before sunrise and the regular dinner after sunset. He was not given lunch or any additional food to replace the nutrition he would have otherwise eaten during lunch outside of Ramadan. The evidence does not show the nutrition content of the three meals a day normally provided to inmates, the nutrition content Hall missed by not eating lunch, or how either of those compare to dietary standards and requirements.

4

Hall's estimations are pure speculation. Additionally, Bryant responded to Hall's grievance by stating that the meals given to inmates fasting for Ramadan meet dietary standards and requirements. Nevertheless, Hall suffered hunger pangs and was irritated and distracted from his spiritual quest after prison personnel declined to provide him extra food to replace his lost lunch. He lost some weight during Ramadan, but not enough to warrant seeking medical attention. At the end of the fast, he resumed his normal eating.

With respect to Hall's First Amendment claim, Hall is required to prove the challenged prison practice places a substantial burden on his religious exercise. *Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009). A "substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable," *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003) (RLUIPA context), or that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). If the plaintiff makes this showing, the burden shifts to the defendants to show the prison practice was the least restrictive means of furthering a compelling governmental interest, *id.* This test may not apply if the practice is "neutral and of general applicability," in which case it "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice," *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993) (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872 (1990)).[1]

---

[1] The Seventh Circuit Court of Appeals has noted the tension between *Smith*, which denied a First Amendment duty of religious accommodation in broad terms, and *Turner v. Safley,* 482 U.S. 78 (1987), which held that there is a First Amendment duty of religious accommodation in prisons, but has not decided whether such duty exists. *Lewis v. Sternes*, 712 F.3d 1083, 1085 (7th Cir. 2013).

Even if Hall could establish a First Amendment violation, he has not pointed to any case from the Supreme Court or the Seventh Circuit Court of Appeals clearly establishing that providing two meals instead of three – absent any information about the nutrition in the two meals provided or any evidence of sincere religious belief in nutritional content – violated the First Amendment. While he has pointed to another district court case involving the question of whether providing two meals instead of three during Ramadan violated the First Amendment, *Couch v. Jabe*, 479 F. Supp. 2d 569, 589 (W.D. Va. 2006), that case assumed without any evidence that the plaintiff's estimate of only receiving 1,000 calories per day was correct. This Court declines to make such an assumption, so is not persuaded by *Couch*. In any case, *Couch* does not amount to a clear trend that should have put Bryant on notice she was violating Hall's First Amendment rights by providing only two meals a day instead of three. For this reason, Bryant is entitled to qualified immunity on Hall's First Amendment claim.

B.   Late Eid-Ul-Fitr Prayer Service and Feast

A reasonable jury could find that Hall's sincere religious beliefs require that the Eid-Ul-Fitr prayer service be held the morning after the end of Ramadan and that the Eid-Ul-Fitr feast be held some time during the three days following the end of Ramadan. In 2010, Ramadan ended September 9, but the Eid-Ul-Fitr service and the Eid-Ul-Fitr feast were not held until four days after Ramadan, on September 13. Thus, they did not fall within the time limits prescribed by Hall's religious beliefs. Sutton claims the service could not be held over the weekend because he was unable to supervise it, but he did not attend the September 13 prayer service.

Even if a late Eid-Ul-Fitr prayer service and feast substantially burdened Hall's exercise of religion and if Sutton's justification for not holding the prayer service and meal in a timely manner – that he needed to be present to supervise – was a pretext, the Court finds Sutton is

6

entitled to qualified immunity. In 2010 it was not clearly established by Supreme Court or Seventh Circuit caselaw or trends in other caselaw, *Couch* notwithstanding, that holding religious services late violated the First Amendment.

## IV. Conclusion

The Court has reviewed the matter *de novo* and finds that the Report's ultimate conclusions are not clearly erroneous for the reasons set forth in this order. Accordingly, the Court hereby:

- **ADOPTS** the Report as **MODIFIED** by this order (Doc. 60);
- **GRANTS** the defendants' motions for summary judgment (Doc. 53); and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: December 16, 2013**

                                                  s/J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **DISTRICT JUDGE**